UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RICHARD E. SCOTT,

                Plaintiff,                CIVIL ACTION NO. 11-13545

        v.                      DISTRICT JUDGE JULIAN ABELE COOK

COMMISSIONER OF              MAGISTRATE JUDGE MARK A. RANDON
SOCIAL SECURITY,

                Defendant.
_____/

**REPORT AND RECOMMENDATION**
**ON CROSS-MOTIONS FOR SUMMARY JUDGMENT**

**I.**    **PROCEDURAL HISTORY**

    *A.*    *Proceedings in this Court*

On August 14, 2011, Plaintiff filed this case, seeking judicial review of the Commissioner's decision to deny benefits. (Dkt. No. 1). Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), this case was referred to the undersigned to review the Commissioner's decision. (Dkt. No. 3). This matter is before the Court on cross-motions for summary judgment. (Dkt. Nos. 9, 10). Plaintiff also filed a reply brief. (Dkt. No. 11).

    *B.*    *Administrative Proceedings*

Plaintiff applied for Supplemental Security Income benefits on March 26, 2009, alleging that he became unable to work on September 12, 2007. (Tr. 57). The application was initially denied by the Commissioner on June 23, 2009. (Tr. 57). Plaintiff requested a hearing, and on April 20, 2010, Plaintiff appeared with a non-attorney representative before Administrative Law Judge ("ALJ") Paul R. Armstrong, who considered the case *de novo*. In a decision dated June 8,

2010, the ALJ found that Plaintiff was not disabled.  (Tr. 54-67).  Plaintiff requested a review of

this decision on July 27, 2010.  (Tr. 7).  On June 22, 2011, the ALJ's decision became the final

decision of the Commissioner when, after the review of additional exhibits[1] (AC-11E, Tr. 212-

215), the Appeals Council denied Plaintiff's request for further review.  (Tr. 1-6).

     In light of the entire record in this case, this Magistrate Judge finds that substantial

evidence supports the Commissioner's determination that Plaintiff is not disabled.  Accordingly,

it is **RECOMMENDED** that Plaintiff's motion for summary judgment be **DENIED**,

Defendant's motion for summary judgment be **GRANTED**, and that the findings of the

Commissioner be **AFFIRMED**.

## II.    STATEMENT OF FACTS

### A.    *ALJ Findings*

     Plaintiff was 44-years-old on the date the application was filed.  (Tr. 66).  Plaintiff has

past relevant work as a machine operator and laborer.  (Tr. 66).  The ALJ applied the five-step

disability analysis to Plaintiff's claim and found at step one that Plaintiff had not engaged in

substantial gainful activity since March 26, 2009, the date of Plaintiff's application.  (Tr. 59).

     At step two, the ALJ found that Plaintiff had the following "severe" impairments:

residual effects of right ankle fracture, arthritis in bilateral knees, HIV with medication side

effects, depression, anxiety, and alcohol abuse.  (Tr. 59).

     At step three, the ALJ found no evidence that Plaintiff had an impairment or combination

of impairments that met or medically equaled one of the listings in the regulations.  (Tr. 59).

---

[1]  In this circuit, where the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, the "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review.  *See Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993); *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996).  Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ.

Between steps three and four, the ALJ found that Plaintiff had the Residual Functional

Capacity ("RFC") to perform:

> light work . . . with the following restrictions: i) simple, unskilled work only; ii)
> no public contact; iii) no more than superficial contact with supervisors and co-
> employees; and iv) access the restroom 1-3 times per workday at regular intervals
> with the opportunity to change protective garments.

(Tr. 61).

At step four, the ALJ found that Plaintiff could not perform his previous work as machine

operator and laborer.  (Tr. 66).

At step five, the ALJ denied Plaintiff benefits, because the ALJ found that Plaintiff could

perform a significant number of jobs available in the national economy, such as machine tender

(6,000 jobs in southeast Michigan) or assembler (4,000 jobs in southeast Michigan).  (Tr. 66-67).

### B.    Administrative Record

#### 1.    Plaintiff's Testimony and Statements

At the administrative hearing on April 20, 2010, Plaintiff testified that he has a right-

ankle fracture that healed, arthritis in both knees, and that he is HIV positive.  (Tr. 26).  Plaintiff

testified that he takes HIV medication, which causes diarrhea.  (Tr. 27, 46).  In addition,

Plaintiff's anxiety and depression make it difficult to concentrate which, in turn, prohibits him

from following directions.  (Tr. 34-36).  Plaintiff also stated that he cannot work with the public

or get along with coworkers.  (Tr. 36).  Finally, Plaintiff testified that he does not leave the house

for three to four days when he has extreme panic attacks.  (Tr. 39).

#### 2.    Medical Evidence

Plaintiff was diagnosed with HIV in 1991; he has been on medication since that time.

(Tr. 222).  An Infectious Disease Progress Note dated November 14, 2007 says Plaintiff has

"Asymptomatic HIV infection."  (Tr. 882).  A second Infectious Disease Progress Note dated

February 13, 2008 says Plaintiff's HIV disease is "[c]linically doing well." (Tr. 881). A report dated April 23, 2008 says Plaintiff has HIV that is asymptomatic and stable. (Tr. 559).

Plaintiff fractured his right ankle on April 6, 2008. (Tr. 559). On April 23, 2008, Plaintiff underwent an open reduction and internal fixation of his right distal fibula. (Tr. 559-561). Post-operative x-rays of Plaintiff's right ankle revealed no acute abnormalities. (Tr. 836-837). A Podiatry Outpatient Note dated August 12, 2008 says Plaintiff denies any pain and is "walking all over the place" without any pain or symptoms. (Tr. 832).

On August 27, 2008, Dr. M. Dibai performed a psychiatric report on Plaintiff. Dr. Dibai indicated that Plaintiff complained of severe pain of the right ankle, inability to concentrate, mood swings, sleep disorder, and decreased appetite. (Tr. 216). During the interview, Plaintiff was expressive, cooperative, and respectful to the interviewer. (Tr. 217). However, he was hyperactive and prone to agitation. (Tr. 217). He exhibited overt anxiety, internalized anger, insecurity and uncertainty. (Tr. 218). Plaintiff went to the interview with crutches and walked awkwardly on the right side, but he was able to maintain his equilibrium during ambulation. (Tr. 217). Plaintiff was diagnosed as bipolar with mood disorder, and antisocial personality disorder. (Tr. 218-219).

On August 27, 2008, Dr. Cynthia Shelby-Lane performed an internal medicine report on Plaintiff. Dr. Shelby-Lane indicated that Plaintiff alleged disability due to HIV disease, arthritis, a broken right ankle, depression, and sinus problems. (Tr. 222). Dr. Shelby-Lane found Plaintiff had chronic pain in his right foot and a limp on the right side. (Tr. 225). Plaintiff did not have any memory problems. (Tr. 223). During the examination, Plaintiff was alert, fully oriented, cooperative, and dressed appropriately. (Tr. 224).

On October 2, 2008, Plaintiff visited Dr. Usha Kilaru for depression and suicidal thoughts. He was diagnosed with major depressive disorder, generalized anxiety disorder, and lifetime panic disorder. (Tr. 568, 828-829).

On October 24, 2008, Dr. S. Rao performed an evaluation of Plaintiff. Dr. Rao indicated that Plaintiff was alert and fully oriented, his memory was intact, his gait was normal without any ambulatory assistance, and his balance was intact. (Tr. 597). Dr. Rao said Plaintiff did not have diarrhea or loss of memory. (Tr. 596). He had depression "off and on," but no current symptoms of depression or suicidal thoughts. (Tr. 596). Plaintiff's knee pain was better with rest and ibuprofen. (Tr. 596). X-rays of Plaintiff's right knee revealed no fracture, dislocation, or other abnormalities. (Tr. 232). X-rays of Plaintiff's left knee revealed minimal narrowing of the medial joint compartment, but no bone destructive changes. (Tr. 232).

A medical note dated January 13, 2009 says Plaintiff has "some depressed days, sometimes up to 4-5 days of the week." (Tr. 572). However, Plaintiff liked going to the casino, his anxiety was under control, and he does not have panic attacks. (Tr. 572). Plaintiff was diagnosed with major depressive disorder, and panic disorder with Agoraphobia. (Tr. 572).

In March 2009, Plaintiff was diagnosed with depression. (Tr. 577).

On April 2, 2009, Dr. Sorabh Dhar did a medical report on Plaintiff. Dr. Dhar indicated that Plaintiff has diarrhea almost daily, but that the diarrhea does not markedly affect Plaintiff's activities of daily living, social functioning, or ability to concentrate. (Tr. 583).

On April 29, 2009, Damon Brooks of Cass Community Social Services – Plaintiff's non-attorney representative who appeared at the April 20, 2010 hearing – stated the following:

> [Plaintiff] is in no condition to function as expected in a work environment. The mental illnesses that he suffers from cause him to be unable to interact with co-workers and supervisors, or to perform at an acceptable level. He experiences an inability to focus and follow directions. [Plaintiff] exhibits anti-social behavior

through his isolation and agoraphobia. He needs ongoing psychiatric care and treatment.

[Plaintiff] suffers from arthritis in both knees and a fractured ankle that causes pain and does not allow him to stand for long periods of time. [Plaintiff] has HIV that cause[sic] low energy levels and his strength has diminished. He is physically unable to perform at an acceptable [level].

[Plaintiff] has severe mental illnesses and physical illnesses that caused him to become unemployed, homeless, and without medical insurance. Although [Plaintiff] has the willingness to work, he does not have the ability to maintain the necessary attitude, behavior, concentration, persistence, or pace to obtain or maintain substantial, gainful employment. He is mentally and physically ill. His social and physical skills and ability are sharply affected. He is definitely in need of ongoing medical and psychiatric support and treatment, case management, and housing services. [Plaintiff] is unable to work.

(Tr. 655-656).

On May 20, 2009, James Tripp, Ed.D. provided a Mental RFC Assessment in which he found that Plaintiff was moderately limited in the ability to understand, remember, and carry out detailed instruction and in the ability to respond appropriately to changes in the work setting. (Tr. 657-658). He concluded that Plaintiff is able to do simple, sustained, unskilled tasks with persistence. (Tr. 659).

On May 26, 2009, Dr. Shelby-Lane conducted an internal medicine report on Plaintiff. Plaintiff indicated he has diarrheal stools 2-3 times per day, injuries to his knees, and chronic ankle pain. (Tr. 660). Dr. Shelby-Lane found Plaintiff has depression, but no memory problems. (Tr. 661). Plaintiff did not need a cane or ambulatory device for walking; his gait and stance were normal. (Tr. 662).

On June 24, 2009, Dr. John Head performed a Psychiatric Evaluation on Plaintiff. He indicated that "[t]he patient is currently asymptomatic, however past complaints have included anxiety, sadness, los of interest, hopelessness, low energy, insomnia, poor concentration,

forgetfullness[sic] and racing thoughts.  These symptoms have been present for greater than ten

years. [T]he patient has remained clean and sober.  Medications have been beneficial."  (Tr. 755).

On July 7, 2009, Plaintiff reported at a therapy session at Team Mental Health Services

that "all is going well for him."  (Tr. 743).

Dr. Head's Medical Progress Note dated July 20, 2009 says:

[t]he patient is currently asymptomatic, however past complaints have included
insomnia, sadness, loss of interest, hopelessness, low energy, decreased appetite,
racing thoughts, forgetfullness[sic] and poor concentration.  Notably, the patient
reported no anxiety complaints, no mood complaints, no manic symptoms, no
sleep problems, no attention deficit symptoms, no sexual dysfunction, no thought
disorder-related complaints, no pain complaints and no PTSD symptoms.  No
complaints of medication side effects are reported.  Medications have been
beneficial. [P]atient states he is maintaining with his [present] medications.

(Tr. 701).

Dr. Head's Medical Progress Note dated August 19, 2009 says:

[t]he patient is currently asymptomatic, however past complaints have included
insomnia, sadness, loss of interst, hopelessness, low energy, decreased appetite,
racing thoughts, forgetfullness[sic] poor concentration and anxiety.  Notably, the
patient reported no manic symptoms, no attention deficit symptoms, no sexual
dysfunction, no thought disorder-related complaints, no pain complaints and no
PTSD symptoms.  No complaints of medication side effects are reported.
Medications have been beneficial. [P]atient complains of anxiety and sleep
disturbances.

(Tr. 700).

Dr. Head's Medical Progress Note dated September 16, 2009 says:

[t]he patient is currently asymptomatic, however past complaints have included
insomnia, sadness, loss of interest, hopelessness, low energy, decreased appetite,
racing thoughts, forgetfullness[sic] and poor concentration.  Notably, the patient
reported no anxiety complaints, no mood complaints, no manic symptoms, no
sleep problems, no attention deficit symptoms, no sexual dysfunction, no thought
disorder-related complaints, no pain complaints and no PTSD symptoms.  No
complaints of medication side effects are reported.  Medications have been
beneficial.

(Tr. 698).

Dr. Head's Medical Progress Note dated November 5, 2009 says:

[t]he patient's present[] complaints include[] insomnia, sadness, loss of interest, hopelessness, low energy, decreased appetite, racing thoughts, forgetfullness[sic] and poor concentration.  Notably, the patient reported no anxiety complaints, no mood complaints, no manic symptoms, no attention deficit symptoms, no sexual dysfunction, no thought disorder-related complaints, no pain complaints and no PTSD symptoms.  No complaints of medication side effects are reported. Medications have been beneficial. [P]atient complains of depression and not sleeping well[.]

(Tr. 697).

Dr. Head's Medical Progress Note dated December 3, 2009 says "[t]he patient is currently asymptomatic, however past complaints have included insomnia, sadness, loss of interest, hopelessness, low energy, decreased appetite, racing thoughts, forgetfullness[sic] and poor concentration. [N]o complaints of medication side effects are reported.  Medications have been beneficial."  (Tr. 757).

On January 5, 2010, Plaintiff's symptoms included insomnia, sadness, loss of interest, low energy, racing thoughts, and poor concentration.  (Tr. 749).  Plaintiff indicated that he had never attempted suicide, and he denied any current suicidal or homicidal plans.  (Tr. 748). Therapist Alishia Gertcher indicated that Plaintiff would benefit from psychiatric care, medication monitoring, nursing, case management and therapy services to help with his mental illness.  (Tr. 749).

Dr. Head's Medical Progress Note dated February 10, 2010 says "[t]he current reported symptoms include insomnia, sadness, loss of interest, hopelessness, low energy, decreased appetite, racing thoughts, forgetfullness[sic] and poor concentration. No complaints of medication side effects are reported.  Medications have been beneficial."  (Tr. 758).

Dr. Head's Medical Progress Noted dated April 9, 2010 says "[t]he patient's present[] complaints included insomnia, sadness, loss of interest, hopelessness, low energy, decreased

appetite, racing thoughts, forgetfullness[sic] and poor concentration.  These symptoms have been present for greater than ten years.  No complaints of medication side effects are reported. Medications have been beneficial."  (Tr. 759).

Finally, Dr. Head submitted a letter dated April 14, 2010 to the Social Security Administration that says "due to his mental condition, he is disabled and unable to work."  (Tr. 691).

### 3. Vocational Expert

During the hearing, the ALJ asked a vocational expert ("VE") to assume a hypothetical individual who is limited to simple unskilled work; can lift no more than 20 pounds at a time and 10 pounds repetitively; needs access to the bathroom 1-3 times daily at regular intervals with the opportunity to change protective garments; and can only have superficial contact with supervisors, co-workers, and the general public.  (Tr. 47-48).  The VE testified that such an individual could not perform Plaintiff's past relevant work.  (Tr. 48).  The VE testified that such an individual could perform work in the light exertional level as a small products assembler (6,000 jobs in the State) or machine tender (6,000 jobs in the State).  (Tr. 48).  The VE testified that such an individual could perform work in the sedentary exertional level as an assembler, tester, and hand packager (2,000 jobs in the State total).

The VE testified that the hypothetical individual would be precluded from work if he: (1) had panic attacks that caused him to miss more than two days of work per month; (2) would be off task 15 minutes of every hour; and (3) would be off task for at least an hour a day at irregular intervals.  (Tr. 49).

### C.   *Plaintiff's Claims of Error*

Plaintiff claims the ALJ made three errors: (1) he failed to give Dr. Head's, his treating physician, opinion controlling weight; (2) he did not accurately portray Plaintiff's physical and mental impairments in the RFC; and (3) he erred in assessing Plaintiff's credibility.

## III.   DISCUSSION

### A.   *Standard of Review*

In enacting the Social Security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious. *See Sullivan v. Zebley*, 493 U.S. 521 (1990).  The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *See Bowen v. Yuckert*, 482 U.S. 137 (1987).  If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997).  In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).  "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including

-10-

that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may...consider the credibility of a claimant when making a determination of disability"); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility") (internal quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence").  "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility."  *Rogers*, 486 F.3d at 247 (quoting, Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4).

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g).  Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion."  *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen*, 800 F.2d at 545 (*en banc*).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475.  "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts."  *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citing *Mullen*, 800 F.2d at 545).

The scope of this Court's review is limited to an examination of the record only.  *See Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001).  When reviewing

the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *See Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 Fed.Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed.Appx. 521, 526 (6th Cir. 2006).

### B.      Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord, Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed.Appx. 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program ("DIB") of Title II (42 U.S.C. §§ 401 *et seq.*) and the Supplemental Security Income Program ("SSI") of Title XVI (42 U.S.C. §§ 1381 *et seq.*). Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled. F. Bloch, *Federal Disability Law and Practice* § 1.1 (1984). While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

> inability to engage in any substantial gainful activity by reason of
> any medically determinable physical or mental impairment which
> can be expected to result in death or which has lasted or can be
> expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also*, 20 CFR § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial
> gainful activity, benefits are denied without further analysis.
>
> Step Two:  If the claimant does not have a severe impairment or
> combination of impairments, that "significantly limits...physical or
> mental ability to do basic work activities," benefits are denied
> without further analysis.
>
> Step Three:  If the claimant is not performing substantial gainful
> activity, has a severe impairment that is expected to last for at least
> twelve months, and the severe impairment meets or equals one of
> the impairments listed in the regulations, the claimant is
> conclusively presumed to be disabled regardless of age, education
> or work experience.
>
> Step Four:  If the claimant is able to perform his or her past
> relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past
> relevant work, if other work exists in the national economy that the
> claimant can perform, in view of his or her age, education, and
> work experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008) (citing 20 CFR §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534).  "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates."  *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by his impairments and the fact that he is precluded from performing his past relevant work."  *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540.  If the

-13-

analysis reaches the fifth step without a finding that the claimant is disabled, the burden transfers to the Commissioner. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241; 20 CFR §§ 416.920(a)(4)(v) and (g).

### C.   Analysis and Conclusions

#### 1.   The ALJ Did Not Err in His Analysis of the Treating Physician's Opinion

The ALJ stated the following regarding Dr. Head's opinion:

Dr. John Head examined [Plaintiff] in June 2009, observing that he was asymptomatic with past complaints of anxiety, sadness, loss of interest, hopelessness, low energy, insomnia, poor concentration, forgetfulness and racing thoughts[.] A mental status examination demonstrated good grooming, sadness, irritable behavior, anxious appearance, normal speech, intact judgment, logical and coherent thought process, average intelligence, no obsessive or compulsive thought, no delusional or psychotic thought, good insight, and no suicidal thoughts or plan. Dr. Head diagnosed [Plaintiff] with major depressive disorder, and issued a GAF score[2] of 50 despite his observation that [Plaintiff] was asymptomatic. The doctor's progress notes indicate that [Plaintiff] was asymptomatic through December 2009, and euthymic mood and pleasant or happy interaction was noted on subsequent mental status examinations. Prescribed psychotropic medications including Paxil and Seroquel were noted to be beneficial, and [Plaintiff] did not report side effects.

Dr. Head issued a medical source statement in April 2010, indicating that [Plaintiff] was "disabled and unable to work" (Ex. 12F). The ultimate disability

---

[2]The GAF score is "a subjective determination that represents the clinician's judgment of the individual's overall level of functioning. It ranges from 100 (superior functioning) to 1 (persistent danger of severely hurting self or others, persistent inability to maintain minimal personal hygiene, or serious suicidal act with clear expectation of death). A GAF score of 31-40 indicates some impairment in reality testing or communication (*e.g.*, speech is at times illogical, obscure, or irrelevant) or major impairment in several areas such as work or school, family relations, judgment, thinking or mood. A GAF of 41 to 50 means that the patient has serious symptoms . . . OR any serious impairment in social, occupational, or school functioning (*e.g.*, no friends, unable to keep a job). A GAF rating of 51 to 60 signals the existence of moderate difficulty in social or occupational functioning." *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 276 (6th Cir. 2009). "A GAF score may help an ALJ assess mental RFC, but it is not raw medical data. Rather, it allows a mental health professional to turn medical signs and symptoms into a general assessment, understandable by a lay person, of an individual's mental functioning." *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. App'x. 496, 502 fn. 7 (6th Cir. 2006).

determination is reserved to the Commissioner of the Social Security Administration, not to treating physicians.  Statements that [Plaintiff] is disabled or unable to work are not medical opinions but are dispositive administrative findings requiring familiarity with the Regulations and the legal standards set forth therein.  Such decisions are reserved to the Commissioner, who cannot abdicate his statutory responsibility to determine the ultimate issue of disability[.] Under Social Security Ruling 96-2p, treating source medical opinions are to be accorded controlling weight in appropriate circumstances.  Here, Dr. Head's opinion is inconsistent with his own treatment notes, which indicate that [Plaintiff] was largely asymptomatic when under the doctor's care.  As such, the opinion cannot be accorded controlling weight.  It is, however, still entitled to due deference and must be weighed using all of the factors provided in 20 CFR 404.1527 and 416.927.  The nature and extent of Dr. Head's treatment relationship with [Plaintiff] supports the allocation of greater weight, as does his specialization in psychiatry.  However, the doctor's opinion is not well-supported by the available medical evidence, which generally indicates that [Plaintiff] made progress in counseling therapy and was satisfied with prescribed medication.  He admitted that his mental impairments did not interfere with his activities of daily living, and serial mental status examinations were essentially benign.  Considering these defects, the undersigned declines to assign more than limited weight to Dr. Head's opinion regarding [Plaintiff's] disability.

(Tr. 64-65).

Under the treating source rule, "[a]n ALJ must give the opinion of a treating source controlling weight if he finds the opinion 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and 'not inconsistent with the other substantial evidence in [the] case record.'"  *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (quoting 20 CFR § 404.1527(d)(2)); *see also* SSR 96–2p.  Furthermore, even where the ALJ finds that a treating physician's opinion is not entitled to controlling weight, he or she must apply the following non-exhaustive list of factors to determine how much weight to give the opinion: (1) "the length of the treatment relationship and the frequency of examination," (2) "the nature and extent of the treatment relationship," (3) the relevant evidence presented by a treating physician to support his opinion, (4) "consistency of the opinion with the record as a whole," and (5) "the specialization of the treating source." *Id.*; 20 CFR § 404.1527.

The treating-source rule also "contains a clear procedural requirement." *Wilson*, 378 F.3d at 544 (citing 20 CFR § 404.1527(d)). In particular, "the [ALJ's] decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." SSR 96–2p, 1996 WL 374188 at *5; *Rogers*, 486 F.3d at 242. Moreover, "a failure to follow the procedural requirement of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight accorded the opinions denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Rogers*, 486 F.3d at 243.

The issue of whether Plaintiff is disabled within the meaning of the Social Security Act is reserved to the Commissioner. *See* 20 CFR § 404.1527(e); *see also Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004); *Gaskin v. Comm'r of Soc. Sec.*, 280 F.Appx. 472, 474 (6th Cir. 2008). The ALJ "is not bound by conclusory statements of doctors, particularly where they are unsupported by detailed objective criteria and documentation." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001); *see also Kidd v. Comm'r of Soc. Sec.*, 283 F.Appx. 336, 340 (6th Cir. 2008). An opinion that is based on Plaintiff's reporting of his symptoms is not entitled to controlling weight. *See Young v. Secretary of Health & Human Servs.*, 925 F.2d 146, 151 (6th Cir. 1990); *see also Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876-77 (6th Cir. 2007).

Plaintiff argues that the Court should remand the case to the Commissioner because the ALJ did not articulate "good reasons" for not giving controlling weight to Dr. Head's opinion. This Magistrate Judge disagrees.

-16-

First, it is true that the ALJ does not discuss Dr. Head's February 10, 2010 note in which Dr. Head found that Plaintiff's symptoms included: insomnia, sadness, loss of interest, hopelessness, low energy, decreased appetite, racing thoughts, forgetfulness and poor concentration.  (Tr. 758).  However, the ALJ's conclusion that Plaintiff was asymptomatic is supported by the record; numerous notes from Dr. Head contained unequivocal statements that Plaintiff was "asymptomatic."  (Tr. 698, 700-701, 755, 757).  Even assuming Plaintiff had those symptoms in February 2010, that does not mean Plaintiff had a "disability" as defined in the regulations:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also*, 20 CFR § 416.905(a) (SSI).

Second, the ALJ did not need to re-contact Dr. Head because the evidence was not inadequate for the ALJ to determine whether Plaintiff was disabled.  Dr. Head provided all of his progress notes, and Plaintiff does not state what additional information would be needed.  *See* 20 CFR §416.912(e):

> When the evidence we receive from your treating physician or psychologist or other medical source is inadequate for us to determine whether you are disabled, we will need additional information to reach a determination or a decision. To obtain the information, we will take the following actions.

> (1) We will first recontact your treating physician or psychologist or other medical source to determine whether the additional information we need is readily available. We will seek additional evidence or clarification from your medical source when the report from your medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques. We may do this by requesting copies of your medical source's records, a new report, or a more detailed report from your medical source, including your treating source, or by telephoning your medical source. In every

instance where medical evidence is obtained over the telephone, the telephone report will be sent to the source for review, signature and return.

(2) We may not seek additional evidence or clarification from a medical source when we know from past experience that the source either cannot or will not provide the necessary findings.

*See also* SSR 96-5p:

Because treating source evidence (including opinion evidence) is important, if the evidence does not support a treating source's opinion on any issue reserved to the Commissioner and the adjudicator cannot ascertain the basis of the opinion from the case record, the adjudicator must make "every reasonable effort" to recontact the source for clarification of the reasons for the opinion.

Third, Dr. Head's conclusory opinion in April 2010 that Plaintiff was disabled and unable to work is inconsistent with his own treatment notes which show that Plaintiff's mental impairments were generally asymptomatic.

Fourth, Dr. Head's letter dated April 14, 2010 neither provides a substantive basis for his conclusion nor does it identify the necessary medical signs and laboratory findings to support his opinion.  *See* 20 CFR §416.9627(d)(3) ("The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion").

Finally, as Plaintiff concedes, the ultimate conclusion of whether a person is "disabled" is reserved to the Commissioner, not a treating physician.

After review of the record, this Magistrate Judge finds the ALJ properly indicated what weight the ALJ ascribed to Dr. Head's opinion, provided reasons for giving Dr. Head's opinion the weight he accorded, and provided a discussion of the factors outlined in 20 CFR §404.1527.

Plaintiff next argues that the ALJ incorrectly made his ultimate disability determination based on Dr. James Tripp's mental RFC.  Again, this Magistrate Judge disagrees.  While the ALJ gave Dr. Tripp's "substantial weight," the ALJ reached his ultimate conclusion based on the

-18-

record as a whole.  *See* Tr. 65 ("Substantial weight is accorded to the doctor's findings, since he

is familar with the Social Security disability program, examined the available medical evidence,

and issued findings consistent with the manifest weight of the evidence.")

### 2.    The ALJ Did Not Err in Assessing Plaintiff's RFC

Plaintiff argues that the ALJ erred in assessing his RFC because he did not:  (1) follow

SSR 96-8p; (2) include in his RFC determination Plaintiff's HIV diagnosis, medication side

effects, right ankle fracture, arthritis in bilateral knees, depression, anxiety, paranoia, difficulty

being around people, decreased cooperation, unstable mood/affect, crying spells, and alcohol

abuse; and (3) include in his RFC determination Plaintiff's moderate difficulties with

maintaining social functioning, concentration, persistence and pace.

SSR 96-8p says:

> In assessing RFC, the adjudicator must discuss the individual's ability to perform
> sustained work activities in an ordinary setting on a regular and continuing basis
> (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and
> describe the maximum amount of each work-related activity the individual can
> perform based on the evidence available in the case record.

(Footnote omitted).  In his opinion, the ALJ concluded:

> While the record shows that [Plaintiff] has experienced some degree of depression
> and social anxiety in the past, his condition has improved considerably with
> treatment.  Giving all due consideration to [Plaintiff's] testimony regarding
> ongoing social limitations, the undersigned includes restrictions on work
> involving public contact and more than superficial contact with supervisors and
> co-workers.  Additionally, [Plaintiff] is limited to simple, unskilled work due to
> possible impaired concentration. [H]is physical impairments, including bilateral
> knee arthritis and residual effects of the right ankle fracture, reasonably limit
> [Plaintiff] to light exertional work.  Nothing in the record shows that [Plaintiff]
> would be incapable of standing for six hours out of an eight-hour workday or
> lifting twenty pounds occasionally and ten pounds frequently.  Objective
> diagnostic studies show that his knee arthritis is mild and that his ankle fracture
> has healed, and ongoing arthritic pain is effectively treated with ibuprofen.
> [Plaintiff's] HIV is asymptomatic, but antiretroviral medication side effects may
> require access to a restroom 1-3 times a day at regular intervals.

(Tr. 65-66).

This Magistrate Judge finds the ALJ complied with SSR 96-8p.  In addition, after review

of the record, this Magistrate Judge finds the ALJ accounted for all of Plaintiff's mental and

physical limitations that were supported by the record.  (Tr. 62-66).

### 3.      The ALJ Did Not Err in Assessing Plaintiff's Credibility

Plaintiff's final argument is that the ALJ failed to adequately assess Plaintiff's credibility,

specifically as it relates to Plaintiff's complaints of pain.

The Sixth Circuit has discussed the analytical framework for evaluating subjective

complaints of pain:

> First, we examine whether there is objective medical evidence of
> an underlying medical condition.  If there is, we then examine: (1)
> whether objective medical evidence confirms the severity of the
> alleged pain arising from the condition; or (2) whether the
> objectively established medical condition is of such a severity that
> it can reasonably be expected to produce the alleged disabling pain.

*Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986).

Contrary to Plaintiff's argument, the ALJ did determine that Plaintiff met the second

prong of the test.  *See* Tr. 62 ("[Plaintiff's] medically determinable impairments could reasonably

be expected to cause the alleged symptoms[.])" However, that did not end the analysis; the ALJ

went on to discuss whether Plaintiff's statements concerning the intensity, persistence and

limiting effects of his symptoms were credible.  (Tr. 62-66).  The ALJ determined that they were

not credible to the extent they were inconsistent with the RFC assessment.  (Tr. 62).  For

example, the ALJ noted that by August 2008, Plaintiff "reported that he was 'walking all over the

place' without pain or other symptoms" (Tr. 62), and that his knee pain "is noted only

occasionally in the voluminous treatment records from the Veteran's Administration hospital."

(Tr. 63).  This Magistrate Judge finds the ALJ's analysis is supported by substantial evidence.

IV.     **RECOMMENDATION**

Based on the foregoing, it is **RECOMMENDED** that Plaintiff's motion for summary judgment be **DENIED**, Defendant's motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).  The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *See Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court.  The response shall address each issue contained within the objections specifically and in the same order raised.

s/Mark A. Randon_____
MARK A. RANDON
UNITED STATES MAGISTRATE JUDGE

Dated: June 20, 2012

<u>*Certificate of Service*</u>

*I hereby certify that a copy of the foregoing document was mailed to the parties of record on this date, June 20, 2012, by electronic and/or ordinary mail.*

<u>*s/Melody Miles*                                          </u>
*Case Manager*