UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RICHARD E. SCOTT,

           Plaintiff,

   v.

                                    Case No. 11-13545

COMMISSIONER OF SOCIAL SECURITY,      Honorable Julian Abele Cook, Jr.

           Defendant.

## ORDER

The Plaintiff, Richard E. Scott, challenges a final decision by the Defendant, the Commissioner of Social Security ("Commissioner") who rejected his application for Supplemental Security Income ("SSI") benefits. The parties thereafter filed motions for summary judgment, both of which were referred by the Court to Magistrate Judge Mark A. Randon for his evaluation. On June 20, 2012, Magistrate Judge Randon filed a report in which he recommended, *inter alia,* that the Court (1) deny Scott's motion for summary judgment, and (2) grant the motion for summary judgment that had been filed by Commissioner. For the reasons that have been set forth below, this Court fully adopts the report and recommendation of Magistrate Judge Randon.

I.

Scott is a man in his late forties who has completed two years of college. His past relevant work experience has included such employment opportunities as a general laborer, a machine operator in a plastic molding plant, and a serviceman in an automatic laundry machine shop. His

medical history includes a fracture of his right ankle in April of 2008 for which he underwent an open reduction and internal fixation of his right distal fibula. Approximately four months later, Scott received a "Podiatry Outpatient Note" (dated August 12, 2008) which indicated that he was walking normally without pain, with the exception of an arthritic condition in both of his knees. In April of the following year, he began to consume medically prescribed ibuprofen tablets which relieved his knee pain, enabled him to walk several blocks without assistance, ascend a flight of stairs, or stand for a period nearly five hours without any further discomfort to his knees.

In April of 2009, Scott began to live in a shelter where he prepared relatively simple meals, performed such daily chores such as laundry and dishwashing; shopped occasionally and socialized with the other residents.  In 1991, he was diagnosed as being a carrier of HIV - a malady for which he was placed  on a regime of medication which, in his opinion, caused him - and continues to cause him - to experience  physical discomfort, including diarrheal stools.

Turning to his emotional state,  Scott - over a period of years - has experienced bouts of depression and mood swings that reflected a generalized anxiety and panic disorder. In 2010 - following a psychiatric evaluation  by Dr. John Head - some of Scott's symptoms reportedly included insomnia, sadness, loss of interest, low energy, and poor concentration. In April of the same year, Dr. Head - in a written report - opined that his patient was "disabled and unable to work."

## II

On March 26, 2009, Scott unsuccessfully sought to acquire SSI benefits for a disability that allegedly originated on or about September 12, 2007. After a hearing, Administrative Law Judge ("ALJ") Paul R. Armstrong - to whom this case had been assigned for his evaluation - concluded that Scott was not disabled according to the standards of § 1614(a)(3)(A) of the Social Security Act.

Initially, it was Armstrong's determination that Scott had not engaged in any substantial gainful activity since the date of his application. Thereafter, he found that Scott had sustained "severe" impairments to his physical structure which included residual effects upon his right ankle fracture, arthritis in bilateral knees, HIV with medication side effects, depression, anxiety, and alcohol abuse. At the conclusion of the next step in the evaluation process, the ALJ determined that Scott did not have an impairment or a combination of impairments that met or medically equaled one of the listings in the regulations. The ALJ also found that Scott had the residual functional capacity to perform: "light work . . . with the following restrictions:( i) simple, unskilled work only; ( ii) no public contact; (iii) no more than superficial contact with supervisors and co-employees; and (iv) access the restroom 1-3 times per workday at regular intervals with the opportunity to change protective garments." (Tr. 61). It was also the opinion of the ALJ that Scott could not replicate his prior work experience as a machine operator and a laborer. After moving to the next procedural step, the ALJ rejected Scott's quest for benefits after finding that he could perform a significant number of jobs within the national economy, such as a machine tender (6,000 jobs in southeast Michigan) or an assembler (4,000 jobs in southeast Michigan). Feeling aggrieved, Scott asked the Appeals Council to review the administrative record, including the rationale for the ultimate conclusion by the ALJ. However, the Appeals Council turned down his request. The filing of this lawsuit followed on August 14, 2011

III.

This Court has jurisdiction to review the Commissioner's final decisions to determine if (1) the findings are supported by substantial evidence and (2) the correct legal standards were applied. 42 U.S.C. §405(g); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial

3

evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citations omitted), and is "more than a scintilla of evidence but less than a preponderance," *Brainard v. Secretary of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The Court must affirm the Commissioner's decision if it is supported by substantial evidence, even if the evidence could also support a different conclusion. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999).

This review is limited in scope to an examination of the record only. *See Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Thus, the court "does not review the evidence *de novo*, make credibility determinations nor weigh the evidence." *Brainard*, 889 F.2d at 681. Although the Court cannot substitute its own findings for those of the administrative agency where substantial evidence may support both, the court will consider the available record as a whole when making its determination. *YHA, Inc. v. NLRB*, 2 F.3d 168, 175 (6th Cir. 1993).

IV

In support of his motion for summary judgment, Scott argues that the ALJ failed to (1) give controlling weight to the objective medical evidence in the record; (2) fully consider his severe physical and mental impairments, as well as the moderate difficulties in concentration, persistence, social functioning,, or pace that he has experienced over the years, (3) properly factor the residual functional capacity assessment into his ultimate decision, and (4) assess his credibility. The Court will address these arguments in turn.

Scott argues that the ALJ did not articulate sufficiently "good reasons" for not giving controlling weight to the conclusions of his treating psychiatrist, Dr. John Head, who had opined that he is a disabled. person within the meaning of the Social Security Act. Notwithstanding Scott's

4

argument, the ALJ is in the best position to weigh the evidence in order to make findings of fact. The issue regarding the disability of an applicant is reserved to the Commissioner, 20 C.F.R. § 404.1527(d). In 1998, the Sixth Circuit declared that the Commissioner may reject a treating physician's opinion as long as good reasons are identified for not accepting it, *Hall v. Bowen*, 837 F.2d 272, 276 (6th Cir. 1998). Although Dr. Head's notes did note such periodic symptoms as insomnia and sadness, his notes also included numerous unequivocal statements that Scott was "asymptomatic." (Tr. 698, 700-701, 755, 757).

Consequently, the Court finds that the ALJ had substantial evidence for interpreting Dr. Head's medical records to show that Scott was "largely asymptomatic when under [Dr. Head]'s care." (Tr. 64).

Scott also submits that the ALJ's reliance on Dr. James Tripp to interpret Dr. Head's notes was clear legal error. James Tripp, Ed.D., a non-medical doctor who never examined Scott, submitted a mental residual functional capacity analysis of the applicant, finding that he is capable of "simple, sustained, unskilled tasks with persistence." (Tr. 659). Although the ALJ gave substantial weight to Dr. Tripp's analysis, consideration was also given to the clinical observations by two consultative examiners (Drs. Cynthia Shelby-Lane and M. Dibai) along with Scott's history of physical and mental impairments, as well as his relatively unrestricted daily activities. Given the sufficiency of the evidence in the record, the ALJ had no duty to recontact Dr. Head. *See* 20 C.F.R §416.912(e).

Scott further contends that the ALJ did not evaluate whether he was capable of sustained work activities on a regular and continuing basis (e.g., an 8 hour day, 40 hour work week) as required by Social Security Ruling, SSAR 96-8p, 61 Fed. Reg. 34474 (July 2, 1996). This ruling

states that "the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule) and describe the maximum amount of work-related activity the individual can perform based on the evidence available in the case record." 61 Fed. Reg. at 34474. The ALJ did specifically consider Scott's past experience with various medical ailments in evaluating his ability to perform work.

The ALJ also noted Scott's acknowledgment that he could stand for 4-5 hours without any problems. Moreover, the ALJ found that "nothing in the record shows that [Scott] would be incapable of standing for six hours out of an eight-hour work day or lifting twenty pounds occasionally or ten pounds frequently," (Tr. 66). However, the ALJ did recognize that Scott would need an occasional access to a restroom at regular intervals. The ALJ's analysis, therefore, does evaluate Scott's capability to perform an ordinary work schedule. Accordingly, the Court is persuaded that the ALJ's residual functional capacity findings are supported by substantial evidence.

Next, Scott argues that his physical and mental impairments and nonexertional limitations were inadequately considered by the ALJ. In determining a claimant's residual functional capacity, an ALJ must consider and discuss all of the claimant's physical and mental impairments in relation to the claimant's ability to perform on a regular continuing basis. *Varley v. Secretary of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).

Scott argues that the ALJ did not consider his HIV diagnosis, medication side effects, right ankle fracture, arthritic knees, depression, anxiety, paranoia, social difficulties, decreased cooperation, unstable moods, crying spells, alcohol abuse, and difficulties with social functioning

6

and concentration. However, the ALJ specifically addressed these limitations in his residual functional capacity analysis, finding that (1) Scott's HIV was asymptomatic, and (2)  the antiretroviral medication side effects could, arguably require restroom access. (Tr. 66).

Additionally, the ALJ noted that Scott's (1) ankle fracture had healed, and (2) his knee arthritis was mild which could be "effectively treated with ibuprofen." (Tr. 65). The ALJ also considered Scott's depression, anxiety, paranoia, and unstable moods, finding that these conditions had "improved considerably with treatment." (Tr. 65). Furthermore, the ALJ specified restrictions on Scott's contact with supervisors, coworkers, and members of the public due to Scott's ongoing social limitations. Finally, the ALJ found that Scott was limited to simple, unskilled work due to his problems with concentration. Although Scott argues that his physical and mental limitations are more severe than that which was recognized by the challenged decision, the ALJ retains the authority to analyze the overall record and make factual findings regarding the severity of a claimant's conditions. *See* 20 C.F.R. §416.927(e)(2). Accordingly, the Court finds that the ALJ accurately considered Scott's limitations in the residual functional capacity analysis.

Next, Scott argues that the ALJ improperly analyzed Scott's credibility. The Sixth Circuit evaluates subjective complaints of pain by first examining whether there is objective medical evidence of an underlying medical condition. *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986). If this condition is satisfied, the Court then must examine "(1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to give rise to produce the alleged disabling pain." *Id.*; *see also* 42 U.S.C. 423(d)(5).

Here, the  ALJ determined that Scott's statements were "not credible to the extent they are

7

inconsistent with the above residual functional capacity assessment." (Tr. 17). In reaching his finding, the ALJ considered both required prongs of the test. The ALJ found that Scott's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but found that his statements concerning the intensity, persistence, and limiting effects of his symptoms were not credible to the extent that they were inconsistent with the residual functional capacity assessment. (Tr. 62-66). The ALJ also described how Scott used crutches for a period of two weeks after reporting that he was "walking all over the place" without pain or other symptoms, which could indicate that he had exaggerated his pain. (Tr. 62-63). Accordingly, the Court finds that the ALJ's analysis of Scott's credibility is supported by substantial evidence.

Finally, Scott objects to any reliance upon the report, contending that the magistrate judge did not evaluate his second argument; namely, that the ALJ's residual functional capacity determination was incorrect. Notwithstanding this argument, the Court finds that the challenged report does adequately analyze this second argument. (ECF 20,19-20), in that it details Scott's medical history and concludes that the ALJ appropriately determined Scott's residual functional capacity by accounting for all of his limitations. Furthermore, the magistrate judge identified the specific conditions that Scott claimed were not analyzed, along with a quote from the ALJ's report.

## V.

For the reasons that have been outlined above, the Court adopts the report and recommendations of Magistrate Judge Randon. Therefore, (1) Scott's motion for summary judgment is denied, (2) the Commissioner's motion for summary judgment is granted, and (3) the findings of the Commissioner are affirmed.

IT IS SO ORDERED.

8

Date: September 19, 2012                         s/Julian Abele Cook, Jr.
                                                 JULIAN ABELE COOK, JR.
                                                 U.S. District Judge


### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing Order was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail to the non-ECF participants on September 19, 2012.


                                                 s/ Kay Doaks
                                                 Case Manager

9